## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| **Thomas Edwin Olson,** §<br>**Plaintiff** §<br>**vs.** §<br>**United States Veterans Initiative.** §<br>**Defendants** § | **Cause No.** _____ |

## PLAINTIFF'S ORIGINAL PETITION FOR INJUNCTIVE RELIEF
## AND DECLARATORY JUDGMENT

**TO THE HONORABLE JUDGE OF SAID COURT:**

COMES NOW Plaintiff, Thomas Edwin Olson (Olson or Plaintiff), by and through

his own hands as *counsel pro se* herein, files Plaintiff's Original Petition for Injunctive

Relief, Declaratory Judgment, against United States Veterans Initiative, *et. al.* (Defendant

or Defendants) where the Plaintiff alleges as follows:

### 1.   BACKGROUND

The Plaintiff asks this court to address the following very ripe controversy:

*"Can the operational policies and procedures of a nonprofit organization funded
by grants and agreements for services by the United States Veterans
Administration (VA), usurp the human rights and/or civil rights protected by
the United States Code and the Code of Federal Regulations of the people
(military veterans) it serves under the guise of 'safety' or 'no weapons' policy?".*

The ripeness of this controversy is very real, and the *pro se* Plaintiff herein is both

homeless and a disabled veteran that resides at the "Veterans Village", a homeless

shelter operated by the Defendants.

The Plaintiff has pursued and exhausted all remedies available to him, while making compromises that affect his overall health. Because the Plaintiff was forced to seek remedy in this venue, he asks for this court's protection, for the court to appoint legal counsel, and make a referral to the United States Attorney General for investigation into the claims herein.

## 2.   PARTIES

1. Plaintiff, Thomas Edwin Olson, is a resident of Houston, Texas, and currently resides at 18818 Tomball Parkway, No. 364, Houston, Texas 77070.

2. Defendant(s), United States Veterans Initiative (USVI), also known as "US Vets" or US Vets Inc.", whose principle address is 800 West 6th Street, Suite 1505, Los Angeles, California, 96017. USVI is registered as a non-profit organization under 26 USC § 501 (c)(3), with Tax Identification Number 95-4382752. Defendants conduct the day-to-day operations of the Veterans Village, located at 18818 Tomball Parkway, Houston, Texas 77070. This location is situated in the Southern District of Texas.

3. The Stephen Siller Tunnel to Towers Foundations, commonly known as "Tunnel to Towers", is also a not-for-profit corporation under the laws of the State of New York and is recognized by the Internal Revenue Service as a public charity pursuant to 26 USC § 509 (a)(1) and as a tax-exempt organization pursuant to 26 USC § 501 (c)(3).

## 3.   JURISDICTION AND VENUE

4. This Court has jurisdiction over this action under 28 USC § 1331, as the claim arises under the Americans with Disabilities Act (ADA) of 1990, as amended, the Rehabilitation Act of 1973 (RA), as amended, and the CFR.

5. This Court has jurisdiction over this action under 28 USC § 1331, because the Plaintiff is making application for this court to refer this matter for further investigation by

the United States Attorney General.

6.  This Court has jurisdiction over this action under 28 USC § 1332 for the diversity of citizenship.

    a.  The Plaintiff, Thomas Edwin Olson, is a resident of Houston, Texas;

    b.  The Defendant, United States Veterans Initiative's principle address is in Los Angeles, California; and

    c.  Darryl J. Vincent, United States Veterans Initiative's Chief Operating Officer address is PO Box 75239, Kapolei, Hawaii 96707.  His physical address is unknown and may be served wherever he may be found.

7.  Venue is proper in this district under 28 USC § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred in this district.

8.  Venue is proper in this district under 28 USC § 1391(c) because the Plaintiff resides in the district where these events took place.

9.  Venue is proper in this federal district court because the Plaintiff will ask this district court to appoint counsel to pursuant to Title III of the ADA, 28 CFR §§ 36.502 and 36.504.

## 4.   FACTS

**Tunnel to Towers and US Veterans Initiative Inc.**

10.  Tunnel to Towers owns and maintains the former three-story hotel known as the Veteran's Village, located at 18818 Tomball Parkway, Houston, Texas 77070.

11.  For disambiguation purposes, Tunnels to Towers is the New York based charity that owns and maintains the "Veterans Village", while the Defendants (USVI) are responsible for the policies, staffing, and operations that involve its participation in the Veterans Administration's (VA) Grant Per Diem program as defined by 38 CFR Part 61.

12. **Tunnels to Towers is not involved in the policies, operations, acts, or failures to act, which form the basis of the Plaintiff's complaint herein**.

## Disability Law

13. Disability[1] means, with respect to an individual, (1) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (2) A record of such an impairment; or (3) Being regarded as having such an impairment.

14. The Americans with Disability Act, as amended (ADA), and the Rehabilitation Act, as amended (RA), along with the Code of Federal Regulation protect the civil rights of the disabled.

## Plaintiff's Disability

15. Plaintiff is a disabled US Navy Veteran, having served in Operations Desert Shield and Desert Storm in 1990-1991.

16. Currently, the Plaintiff suffers from Femoral Nerve Palsy (Leg Paralysis), a condition where the four quadriceps muscles of the Plaintiff's upper left leg are paralyzed along with some muscles in the lower leg.

## Gastric Bypass Surgery & Nutritional Requirements

17. On July 7th, 2023, the Plaintiff underwent a "Route En Y Gastric Bypass" (Gastric Bypass Surgery ) at Baylor St. Lukes Medical Center.

18. The necessity of weight loss was a prerequisite to the Plaintiff undergoing Total Hip Arthroplasty (Hip Replacement), to reduce the risks of complications therein by reducing the Plaintiff's weight from 320 to 230 pounds.

---

[1] *See* the Definitions section 12102 (section 3) of the ADA,

Plaintiff's Original Petition for Injunctive Relief and Declaratory Judgment

19. The Plaintiff's dietary requirements (Diet) are established by the Baylor-St. Luke's Weight Loss & Metabolic Center, and Dr. Julie-Ann Lloyd MD, the Plaintiff's surgeon.

20. The Plaintiff's Diet requires him to consume at least 60 grams of protein on a daily basis along with multivitamin and calcium supplements in perpetuity.

**Hip Replacement Surgery**

21. The Plaintiff underwent a total hip arthroplasty surgery (Hip Replacement) on October 3rd, 2023, at the Michael E DeBakey Veterans Administration Medical Center in Houston, Texas (MEDVAMC).

22. Due to the negligence by the attending surgeon, or the resident surgeons and a 4th year medical student, under the supervision of the attending surgeon, in surgery, the Plaintiff's femoral and adductor magnus nerves of his left leg were damaged (severed). This is the direct cause of the Leg Paralysis.

23. The plaintiff undergoes physical therapy on a weekly to twice-weekly basis to protect, strengthen the remaining muscles in his leg. This physical therapy (PT) will continue until the nerves heal or if the damage is permanent, up to three years.

24. According to the Journal of Arthroplasty[2], the Plaintiff has a 75% chance of getting 75% of his muscle functionality back at 33 months post-operation.

**Unemployability**

25. The Plaintiff's Leg Paralysis makes him unable to walk normally. He is unable ambulate without the use of a cane or crutches and/or hinged knee brace on uneven

---

[2] *"Femoral Nerve Palsy Following Total Hip Arthroplasty Incidence and Course of Recovery"* **Andrew N. Fleischman, MD, Richard H. Rothman, MD, PhD, Javad Parvizi, MD, FRCS,** The Journal of Arthroplasty, November 2017.

Plaintiff's Original Petition for Injunctive Relief and Declaratory Judgment

surfaces.  While the Plaintiff has and uses these devices, he still suffers from a fall almost every other week.

26. After the Hip Replacement, the Plaintiff was unable to begin employment in Kerrville, Texas or "Texas Hill Country" due to the Leg Paralysis and uneven surfaces where he would work.

27. The Plaintiff cannot perform work for his own company[3], as an Unmanned Aerial Systems Pilot[4] pursuant to federal regulations[5], because of the medication he takes to control the chronic pain in his leg.

**Title 38 USC 1151 Claim for Disability Due to Injury**

28. On November 1st, 2023, the Plaintiff filed a claim for disability pursuant to 38 USC § 1151 with the Veterans Benefits Administration (VBA).   This allows disability compensation for injuries suffered as a results of carelessness or negligence by the VA.

29. As of April 15th, 2024, the Plaintiff is still awaiting an adjudication by the VBA.

30. The Plaintiff made the claim for compensation as required pursuant to the Federal Tort Claims Act; however, he has not reached the six-month mark where he may pursue a judicial remedy against the VA in this venue.

**Homelessness**

31. The Plaintiff's physical disability ultimately caused his financial hardship causing the Plaintiff to become both unemployable and homeless[6] awaiting a decision from

---

[3] *See* Lone Star Intelligence, Surveillance and Reconnaissance, LLC; *see also* http://www.lonestarisr.com
[4] 14 CFR 107.1 *or see* FAR 107.1
[5] 14 CFR 91.17
[6] "Homeless" has the meaning given that term in section 103 of the McKinney-Vento Homeless Assistance Act (42 U.S.C. 11302(a)).

Plaintiff's Original Petition for Injunctive Relief and Declaratory Judgment

the Veterans Benefits Administration.

32. On January 17th, 2024, with the assistance from a VA social worker that specialize in helping and preventing homelessness in the veterans population, the Plaintiff was able to be placed into Veteran's Village facility owned by Tunnel to Towers, and operated by the Defendants, funded via a Grant Per Diem program[7] (GPD Program) paid for by the VA.

33. The Veterans Village was an extended-stay hotel, converted into a homeless shelter for veterans by the Tunnel to Towers foundation.  Therein, the Plaintiff resides in a single occupancy room similar to that of an extended stay hotel.

**Veterans Administration's Grant Per Diem Program**

34. Pursuant to the GPD Program, the Defendants are required to provide services that includes temporary and permanent housing, mental health and wellness services, financial counseling, employment/skills development and meals paid for by the Veterans Administration[8] program to assist homeless veterans.

35. The Defendants are required to provide meals or meal preparation facilities to the Plaintiff[9].

**Confiscation of Kitchen Cutlery**

36. On January 24th, 2024, the Plaintiff learned he has no expectation of privacy when his room and possessions were searched by Calvin Jackson, Necole Freeman and a third USVI employee under Defendants Jackson's and Freeman's supervision. Therein, a three-inch (3") paring knife, traditional cutlery found in most all kitchens,

---

[7] 38 CFR Part 61
[8] *Id.*
[9] 38 CFR 61.80(b)(12)

Plaintiff's Original Petition for Injunctive Relief and Declaratory Judgment

was confiscated by Freeman.

37. The Plaintiff showed Calvin Jackson and Necole Freeman (Freeman) an à la carte whole meatloaf purchased, the previous evening, from Boston Market stored in his refrigerator to accommodate his Diet.  The Plaintiff verbally stated the knife was necessary for the preparation of his food.  Freeman ignored the Plaintiff and declared the kitchen cutlery was a weapon; thus, it was confiscated.

38. Later, on January 24th, 2024, the Plaintiff sent an email to Calvin Jackson (CJackson@usvets.org), Necole Foreman (NForeman@usvets.org), David Traxler (DTraxler@usvets.org), and the Plaintiff's then-case manager, Rose Lawson (rlawson@usvets.org), demanding that the Defendants return the cutlery the Defendants removed from his room earlier that day.  *See* Email, Subj: *"Narcan Nasal Spray - OVER THE COUNTER and my paring knife."* at Exhibit 1.

39. The beginning of the email read:

> *"Necole and Calvin,*
> *Before you get all the information on Narcan being an Over The Shelf (OTC) medication, I am first raising the matter with the paring knife you took from my room and your request for documentation from my doctor that I have special dietary requirements.  I have attached parts of my VA medical records and Baylor medical records that document undergoing gastric bypass surgery in July of this year (6 months ago) and part of the dietary guidelines for gastric bypass patients.  This document is attached herein. If you want to read the entire dietary program, click here.*
> *Necole, you may have noticed the bags of apples, grapes and nectarines in my fridge and on the cabinet.  I also had a meatloaf in my fridge that cannot be cut with a plastic knife.  I purchased that meatloaf from Boston Market last night after spending $50 on first aid supplies that should have been here, on site, after I fell.*

*If you insist on keeping my paring knife, show me some documentation from the VA that says 'no cutlery allowed in the room'.  Larry Swann directed me to connect with Donna Ogden, the VA's dietician that will be here Friday for the inspection to discuss the diet challenges I am already facing.  So, if I cannot have the knife back, I will show Ms. Ogden the meatloaf and fruit and I will ask her for a new knife. …"*

40. Attached to that email, were excerpts from the Plaintiff's VA Medical Record and documentation from his Baylor-St. Luke's surgeon/surgical team, that performed the gastric bypass documenting his dietary requirements. *See* Exhibit 2, *"Documentation of Gastric Bypass."*, attached to the email in Exhibit 1.

41. Despite the Plaintiff's repeated requests made with accompanying supporting documentation explaining the necessity of the cutlery in his room, the Defendants refused to return the cutlery used to privately prepare his food.

42. If another knife were discovered, the Plaintiff would be subject "discharge" or eviction from his residence at the Veteran's Village, again becoming homeless under the guise of the Defendant's "No Weapons Policy".

43. The Plaintiff does not have a criminal record nor is he a violent person.

44. The Plaintiff used the knife for self-accommodation for his Diet.

**Dietary Requirements**

45. The Plaintiff's Diet is dictated by the Gastric Bypass surgery.

46. The Plaintiff's Diet requires him to consume at least 60 grams of protein daily

47. The Plaintiff now requires an additional 20 additional grams of protein to protect the already atrophied muscles in the paralyzed leg.

48. Initially, the Defendants fell far short of meeting the Plaintiff's dietary requirements because all meals were catered by an outside company until the Defendant's kitchen

received its permit to operate on-site.

49. During this period, the Plaintiff made up the difference on his own, preparing the foods he purchased privately in his room.

50. When the Defendants confiscated the Plaintiff's cutlery, they converted what was mostly a self-accommodating measure taken by the Plaintiff to eat properly into a fully formed disability causing damages.

**Attempts at Alternate Resolutions**

51. Upon taking up residence at the Veterans Village, the Plaintiff verbally notified the Defendants of his dietary restrictions and requirements related to his Gastric Bypass surgery.

52. On January 24th, 2024, the Plaintiff notified the Defendants via email he needed the cutlery in his possession.

53. On at least 4 occasions, the Plaintiff volunteered 4 or more hours (greater than 16 hours) of his time and cooking skills in the Defendant's kitchen facilities to serve the community and gain familiarity with the kitchens policies and procedures under the staff's supervision.

54. The Plaintiff has repeatedly requested that he be allowed to access the facilities kitchen under the defendants control where can safely prepare his own food, giving him access to utensils, including metal forks, spoons and knives to pre-prepare meals stored in his dorm-sized refrigerator, or request for a knife to alter the form of the food served to him, thus reducing risk of gastric blockage or regurgitation; something he has experienced while living at the Veterans Village.

55. The Plaintiff was granted use of the kitchen on 4 occasions and the access granted was dependent on which chef was approached.   When not granted this

accommodation, the Plaintiff became relegated to eating foods containing more simpler starches, *e.g.* mashed potatoes, soups, or skipping meals all together depending on what is being served.

56. Relying on these easier to eat and digest foods have resulted in the Plaintiff gaining weight.

**Meeting for Attempted Resolution**

57. The Defendants Grievance Policy[10], "(Client Grievance Policy) Rev. 4.20.15" is published on their website.  Therein, it reads:

> *"Procedure ...*
> *A meeting will take place with the grievant and a representative of U.S.VETS within 3 business days of the presenting complaint. If grievant chooses to file a due process appeal. U.S.VETS will assist in completing applicable forms."*

58. This grievance policy is moot, failing to define a deadline for resolution or who a grievance should be presented to.

59. On the night of March 28th, 2024, after the Plaintiff was again denied access to the kitchen, the Plaintiff sent a strongly worded follow up email to Darryl J. Vincent, MSW, CSAC, USVI's Chief Operating Officer, Necole Freeman, MBA, USVI's Veterans Service Manager, David Traxler, USVI's Executive Director and Larry Swann, the VA's liaison to USVI, with the subject line: "Formal Complaint - Access to food and food preparation.".  Therein, the Plaintiff demanded the Defendant remedy the problem, citing that reasonable accommodations where not met, and his willingness to compromise had come to an end.  The Plaintiff closed that email

---

[10] *See* https://usvets.org/wp-content/uploads/2021/10/U.S.VETS_Grievance_Policy_File_copy_4.20.15.docx

Plaintiff's Original Petition for Injunctive Relief and Declaratory Judgment

with:

> *"If there is any doubt about how I feel, let me be clear with you. I am done being treated like an inmate at a halfway house. I am pissed and there are going to be changes to how US Vets treats me as a human being and a client or I will start using my circle of influence in the US and Texas legislatures to put a dent in your gravy train, affecting US Vets tooth to tail ratio."*

60. On the morning of April 2nd, 2024, the Plaintiff met with Juntre Francis (Francis), his USVI case worker, Karen Jones (Jones), Transitional Housing Coordinator, Larry Swann (Swann), the Plaintiff's VA Liaison, and an unidentified VA employee in Jone's office.  In that meeting, specifically to discuss the Diet controversy that forms the basis of this suit, the Plaintiff and Swann made it clear to Jones that accommodations must be made, again citing how and why the Plaintiff must be given access to utensils to prepare his food, or the Plaintiff be allowed to possess cutlery in his room where he resides.

61. Therein, Jones outright refused to allow the Plaintiff to possess kitchen cutlery in his room as a solution.  The Plaintiff agreed to allow the Defendants time to discuss a potential remedy; however, when asked, Jones refused to agree to a deadline for that resolution.

62. Before the end of the meeting, Jones was handed the Plaintiff's iPad displaying an early draft of these pleadings.  The Plaintiff explained to Jones that if accommodations are not made he would seek remedy in this venue.

63. Later, on April 2nd, 2024, Francis met with the Plaintiff, where the Plaintiff received and returned a completed form detailing his dietary requirements to Francis. Attached to the form was again the documentation the gastric bypass and dietary requirements sent to the Defendants on January 24th, 2024. *See* **Exhibit 2,**

*"Documentation of Gastric Bypass.".*

64. As of April 15th, 2024, almost two weeks after the meeting, the Defendants have not offered or made any proposal to solve the problem.

**Inedible Food, Refusal to Provide Accommodation**

65. Many times, the food served to the Plaintiff by the Defendants is insufficient in its nutritional value, meaning the balance of starches to proteins is too high, or the food is not consumable due to its form and the utensils necessary to consume it.

66. The Plaintiff is able eat cuts of red meat, but it requires him to cut the pieces into dime-sized bits to consume.  This accommodation was made to the Plaintiff by the head chef on March 31st, 2024, and the Plaintiff was extremely grateful.  The Plaintiff consumed the steak over two days.  *See* Photo, Exhibit 4.

67. On April 4th, 2024, Defendants kitchen staff served the Plaintiff a steak that was deep fried and too tough to cut with plastic cutlery.  The Plaintiff asked the chef for access to a sharp knife three times and was refused each time.  The chef is familiar with the Plaintiff's medical condition and dietary requirements.

68. Juntre Francis, the Plaintiff's USVI case manager, the same case manager present at the April 2nd meeting, was nearby and was approached by the Plaintiff.  The Plaintiff asked Francis to intervene.  Francis approached the chef, and his intervention was also rebuffed with the chef stating to the effect *'use the plastic utensils in the dining room'*.  The Plaintiff told Francis this was unacceptable and that he would pursue this very remedy.

69. Upon the Defendant's refusal to accommodate, the Plaintiff took the meal to his truck in the Veterans Village parking lot where he retrieved a pocketknife from the cab and ate this meal while sitting on the truck's tailgate. *See* Exhibit 4, a video online

Plaintiff's Original Petition for Injunctive Relief and Declaratory Judgment

at:                                    *2 min. 50 seconds in length.*

**Risk of Homelessness vs Reward for Self-Accommodation**

70. The Defendants have not only failed to make reasonable accommodations for the Plaintiff, but overtly burdened him; thus, escalating the Plaintiff's dietary challenge/borderline disability by self-accommodation into an outright disability.

71. The Plaintiff repeatedly sought alternative courses of action to avoid this lawsuit, going as far as the Plaintiff weighing the risks of hiding cutlery in his room that he could use, versus risking homelessness on the street if a replacement knife were discovered therein.

**Rarely Reasonable Accommodations Were Made**

72. From time to time, depending on which chef was on duty, the Defendants made reasonable accommodations and the Plaintiff is grateful for each time an accommodation was made.

73. These instances when the accommodation was made were rare and an exception and not the rule.

### 5.   APPLICABLE LAW

74. Title III of the Americans with Disabilities Act of 1990[11], as amended by the ADA Amendments Act of 2008[12] prohibits discrimination on the basis of disability by public accommodations[13].

75. The ADA is applicable because the Veteran's Village is a homeless shelter.[14]

---

[11] 42 U.S.C. 12181–12189
[12] Public Law 110–325, 122 Stat. 3553 (2008)
[13] 28 CFR 36.102 Application
[14] 28 CFR 36.104 *"Place of public accommodation"* (11) *"A day care center, senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment;"*

76. Section 504 of the Rehabilitation Act of 1973, as amended, states that *"no qualified individual with a disability in the United States shall be excluded from, denied the benefits of, or be subjected to discrimination under"* any program or activity that either receives federal financial assistance or is conducted by any executive agency.

77. The Defendants are subject to the Rehabilitation Act as amended because they receive money from the Veterans Administration's Grant Per Diem Program[15].

78. Under the VA's Grant Per Diem program, the Defendants are required provide meals to residents with disabilities or meal preparation facilities must be available.[16]

79. United States Code and the Code of Federal regulations[17] require the Defendants to afford reasonable accommodations to comply with the ADA because it operates a homeless shelter.

## 6.   DAMAGES

80. The Plaintiff's Diet requires him to consume mostly protein-rich foods, less starches and in smaller bite-sized pieces because his digestive tract has been surgically altered.

81. Without the surgical injury during the Hip Replacement surgery, the Plaintiff's diet requires him to consume a minimum of 60 grams of protein per day.  Because of the surgical injury, the plaintiff requires an extra 20 grams of protein per day (60 + 20) to help stave off further atrophy to the paralyzed leg.

---

[15] 38 CFR 61.80

[16] 38 CFR 61.80(b)(12) General operation requirements for supportive housing and service centers. (a) Supportive housing and service centers for which assistance is provided under this part must comply with the requirements (a) of this section and are approved by VA, supportive housing must meet the following requirements: ...

(12)The residents with disabilities must be provided meals or meal preparation facilities must be available;

[17] 28 CFR 36.104 (Definitions) (11) A day care cent a senior citizen center, homeless shelter, food bank, adoption agency, or other social service center establishment and

Plaintiff's Original Petition for Injunctive Relief and Declaratory Judgment

82. The Defendants violated both the Plaintiff's human rights and his civil rights when they overtly removed his ability to accommodate his own nutritional needs.

83. The Defendants violated both the Plaintiff's human rights and his civil rights when they refused to make a reasonable accommodation of granting him access to the Defendants kitchen.

84. The Plaintiff weighed 234 pounds upon taking up residence at the Veterans Village.

85. The Plaintiff weighed 249 pounds as of April 13th, 2024, and still resides in the Veterans Village.

86. The Plaintiff underwent Gastric Bypass surgery to reduce the chance of surgical complications. Now, circumstances and Facts herein, the progress he has achieved on his own is destroyed by the Defendants desire to control the Plaintiff under the guise of a "No Weapons' policy.

87. The effectiveness of the Plaintiff's physical therapy decreases as he gains weight.

88. The Plaintiff stores his pocketknife in his vehicle, so he is not in violations of the policy and is forced to eat off the tailgate of his truck in the parking lot of the Veterans Village where he lives.

89. The Defendants actions are dehumanizing and meant to injure the Plaintiff's dignity, regardless of the documented Diet he must follow, prescribed by his surgeon.

### 7.   STANDING

90. The Plaintiff has standing to bring this action against the Defendants pursuant to 28 CFR § 36.501 (Private suits). Therein it reads:

> (a) General. _Any person who is being subjected to discrimination on the basis of disability in violation of the Act_ or this part or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of section 303 of the Act or subpart D of this part _may institute a civil_

*action for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order.*

91. Additionally, by application, the Attorney General may act as an intervenor[18]

## 8.  CLAIMS FOR RELIEF

### 8.1 Temporary and Permanent Injunction for Violations of the American's with Disabilities Act, Rehabilitation Act and the Code of Federal Regulations.

92. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 91.

93. The Plaintiff has a medical condition/borderline disability that he was self-accommodating.

94. The Defendants confiscated the Plaintiff's means of self-accommodation and have converted the Plaintiff's medical condition/borderline disability into a full-fledged disability[19].

95. The Defendants are in violations of 38 CFR 61.80(b)(12) for not providing adequate meals for meals or meal preparation facilities.

96. Defendant's acts and/or failures to act, specifically to allow reasonable access to kitchen to prepare the meals he can eat, or utensils to cut the food served to him constitutes a violation of the Americans with Disabilities Act as amended. *See supra* ¶ 69

97. The Plaintiff's physical disability has worsened[20] due to the Defendants omissions,

---

[18] 28 CFR § 36.501 "… Upon timely application, the court may, in its discretion, permit the Attorney General to intervene in the civil action if the Attorney General or his or her designee certifies that the case is of general public importance."
[19] Route NY Gastric Bypass
[20] Weight gain from 234 to 249

Plaintiff's Original Petition for Injunctive Relief and Declaratory Judgment

acts or failures to act as required by federal law and the Code of Federal Regulations. *See supra* § 6.

98. The Defendants have overtly and specifically stated their refusal to grant the Plaintiff alternative accommodations. *See supra* ¶ 57

99. The Plaintiff has exhausted all other remedies.

100. The Defendants "no weapons" policy is a violations of the Plaintiff's human rights because its policy restricts what the Plaintiff eats and how he must eat it.

101. The Defendants "no weapons" policy is a violations of the Plaintiff's civil rights, causing the Plaintiff physical damages, by ignoring the rights afforded to him, and protected by the Americans with Disabilities Act, as amended, the Rehabilitation Act, as amended, and the Code of Federal Regulations when it created applied its "no weapons" policy to the Plaintiff's means of self-accommodation.

102. Injunctive relief is proper in this court pursuant to 28 CFR 36.501 (Private suits) "*for preventive relief, including an application for a permanent or temporary injunction, restraining order, or other order*", enjoining the Defendants from prohibiting cutlery in the possession of the Plaintiff or those others that may be similarly situated.

**8.2 Declaratory Judgment for Violations of Federal Law**

103. Plaintiff re-alleges and incorporates by reference the allegations contained in paragraphs 1 through 93.

104. The Plaintiff had a medical condition/borderline disability that he was self-accommodating.

105. The Defendants confiscated the Plaintiff's means of self-accommodation and have converted the Plaintiff's medical condition/borderline disability into a full-fledged

disability[21].

106. The Defendants are in violations of 38 CFR 61.80(b)(12) for not providing adequate meals for meals or meal preparation facilities.

107. The Plaintiff's physical disability has worsened[22] due to the Defendants omissions, acts or failures to act as required by federal law and the Code of Federal Regulations.

108. The Defendants have overtly and specifically stated their refusal to grant the Plaintiff alternative accommodations. *See supra* ¶ 57

109. The Plaintiff has exhausted all other remedies.

110. A Declaratory Judgment, finding the Defendants have violated federal law and the Code of Federal Regulations is proper, allowing the Veterans Administration to have standing to pursue remedial actions as prescribed in Title 38 of the Code of Federal Regulations.

### 9. PLAINTIFF'S APPLICATION FOR COURT APPOINTED COUNSEL

111. Whereas I, the Plaintiff herein, believe with a high degree of certainty that I will survive and prevail at trial, I also believe this court may strictly hold me to the Fed. R. Civ. P., based on the thoroughness of my pleadings; and

112. Whereas I am technically homeless, living in "*flux*" in a homeless shelter, without permanent residence; and

113. Because this is a very real and ripe controversy, involving a claim to preserve mine and others similarly situated, human and civil rights under the ADA, that I, and others, would be best served with the assistance of counsel in this Civil Rights case.

---

[21] Route NY Gastric Bypass
[22] Weight gain from 234 to 249

Plaintiff's Original Petition for Injunctive Relief and Declaratory Judgment

The appointment of counsel is a proper, and warmly welcomed, pursuant to 28 CFR § 36.501, (Private suits)[23].

114. Also, as the Plaintiff, I also welcome any other protections this court may offer *sua sponte*.

### 10. PLAINTIFF'S APPLICATION FOR REFERRAL TO THE UNITED STATES ATTORNEY GENERAL, CIVIL RIGHTS DIVISION

115. Whereas I, the Plaintiff, witness the Defendants ignore a now-discharged veteran's requests to seek arbitration, alternative dispute resolution and request to be removed from a room she was berthed with a hostile roommate to a room where she was readily welcomed due to a conflict;

116. Whereas I, the Plaintiff, witnessed the Defendants ignore that veterans request for help and subsequent "discharge" without good cause; and

117. Whereas I, the Plaintiff, am concerned with the Defendants power to "discharge" myself in an act of retaliation for filing this lawsuit, I believe this matter warrants a referral to the United States Attorney General pursuant to 28 CFR § 36.502[24].

118. Therefore, I, the Plaintiff herein, request this court notify or make referral of this matter for investigation by the office of the United States Attorney General and the Division of Civil Rights, to investigate the claims I have asserted herein.

### 11. DEMAND FOR TRIAL

119. Plaintiff demands a trial on all issues so triable.

---

[23] 28 CFR § 36.501, Private suits, (a) General …"*Upon application by the complainant and in such circumstances as the court may deem just, the court may appoint an attorney for such complainant and may authorize the commencement of the civil action without the payment of fees, costs, or security.*"

[24] "*(a) The Attorney General shall investigate alleged violations of the Act (ADA) or this part. (b) Any individual who believes that he or she or a specific class of persons has been subjected to discrimination prohibited by the Act or this part may request the Department to institute an investigation. (c) Where the Attorney General has reason to believe that there may be a violation of this part, he or she may initiate a compliance review.*"

## 12.   CERTIFICATION

120. Under Fed. R. Civ. P. 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint:

a.  is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

b.  is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law;

c.  the factual contentions have evidentiary support or, if specifically, so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and

d.  the complaint otherwise complies with the requirements of Rule 11.

121. Additionally, I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep the current address on file with the Clerk's Office may result in the dismissal of my case.

## 13.   PRAYER FOR RELIEF

WHEREFORE, PREMISES CONSIDERED, Plaintiff, Thomas Edwin Olson, respectfully prays this court take the following actions:

a.  Grant the Plaintiff leave of the court to file *Plaintiffs Application Forma Pauperis.*

b.  Order the Defendants to appear and answer before the court in a preliminary hearing where the Plaintiff will submit a motion for temporary injunction.

c.  Order the Defendants be temporarily and permanently enjoined from violating the Plaintiff's privacy, or entering his living space unannounced, or without his prior consent, or interfere with his use of cutlery in his own living space;

d.  Order the Defendants to allow for the Plaintiff's restricted (<u>not unrestricted</u>), access to the kitchen facilities, in a manner customary to any employee working therein to the Defendant, during its operational hours and in a manner not to burden the staff in their duties AND IF SO GRANTED, order the Plaintiff to

perform all tasks as required by his presence to ensure food safety, and cleanliness;

e. Permanently enjoin the Defendants from using a "no weapons" policy as a pretext to prevent the Plaintiff and those similarly or medically situated from possessing kitchen cutlery or utensils necessary to accommodate their disabilities.

f. Upon trial, find that the Defendants have violated federal law and the Code of Federal Regulations and enter a Judgment of the courts findings.

g. Grant the Plaintiff, if allowed, punitive damages for the harm suffered in the amount of at least one US dollar ($1.00);

h. Grant Plaintiff his costs, expenses, and reasonable attorneys' fees incurred in this action if the Plaintiff or this Court so appoints legal counsel; and

i. Grant to the Plaintiff any such other and further relief as the Court deems just and proper.

Respectfully submitted,

Plaintiff, *pro se*

Thomas Edwin Olson
18818 Tomball Parkway
No. 364
Houston, Texas 77070

281-236-2506
olson@webtoaster.com

Pacer Account No. 6374371,
Pacer Username: Webtoaster,
Upgraded Pacer User

Plaintiff's Original Petition for Injunctive Relief and Declaratory Judgment